IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**GEORGE M. STOKES**                                                                                    **PLAINTIFF**

vs.                                    Case No. 5:09CV00170 BSM

**SOUTHERN STATES COOPERATIVE,
INC.**                                                                                                              **DEFENDANT**

## ORDER

Defendant, Southern States Cooperative, Inc. ("Southern") moves for summary judgment [Doc. No. 11]. Plaintiff, George M. Stokes ("Stokes") objects [Doc No. 29], and Southern replied [Doc No. 35]. Southern's motion for summary judgment [Doc. No. 11] is granted because Stokes has failed to allege sufficient evidence to make out a prima facie case.

## I. FACTUAL BACKGROUND

In March 1999, David Roberts and P&K Farms (collectively, "Roberts") leased farm land from Stokes pursuant to an agricultural agreement. Def.'s Summ. J. Mot. Ex. U. As rent, Stokes agreed to accept a share of the crops produced by Roberts on the land. *Id*. Roberts financed his farming operation with loans from related entities, Statesman Financial Corporation ("Statesmen") and Southern. *Id.* Ex. S. As collateral for the loans, Statesmen and Southern took security interests in Roberts's farm equipment as well as the soybean, cotton, and rice crops. *Id.* Stokes personally guaranteed the loan from Southern but not the loan from Statesman. *Id.* Ex. A.

In the fall of 1999, Roberts planted wheat on a portion of the rented land. *Id.* Ex. S.

In April 2000, Roberts gave Southern a security interest in the wheat crop. *Id.* Three weeks later, Southern notified Roberts that his loan was delinquent and threatened to sue if the balance was not paid in fifteen days. *Id.* Ex. D.

Southern subsequently made demand upon Stokes pursuant to the guaranty and Stokes failed to make payment. *Id.* Ex. S. In June of 2000, Southern sued Stokes for $249,854.03. Pl.'s Resp. Br. Ex. 7.

A number of other lawsuits arose out of the same lease and loan transaction. These lawsuits involved multiple parties and overlapping claims. Stokes acted as plaintiff in at least some of these cases. *See, e.g.,* Def.'s Summ J. Mot. Ex. G, Ex. J. These various cases were later consolidated. *Id.* Ex. L.

Southern moved for summary judgment on the claims against it, and in 2005, after years of litigation, the state circuit court granted that motion, holding that there was no factual dispute as to the execution, liability, and amount of the guaranty. *Id.* Ex. P, Ex. X. Stokes also moved for summary judgment, arguing that Southern took payments addressed to it and misapplied the payments to the debt owed to Statesman. *Id.* Ex. P. In granting Stokes's motion for summary judgment, the circuit court held that the guaranty had been satisfied because the payments from Roberts made to Southern, should have been applied to the Southern loans but were misapplied to the Statesman loans. *Id.*

Asserting that he prevailed in the guaranty action, Stokes filed a motion for attorney's fees. *Id.* Ex. X. Southern also filed a motion for attorney's fees, asserting that it too had

prevailed in the guaranty action. *Id.* The circuit court denied both motions, holding that, in light of all the consolidated actions, neither party had prevailed. *Id.* After a series of appeals, the circuit court again denied both parties' motions for attorney's fees, holding that neither party had prevailed in the guaranty action. *Id.* Ex. W. In the case of *Southern States Cooperative, Inc v. George Stokes*, No. CA07-1205, 2008 Ark. App. LEXIS 799, at *10-11 (Ark. Ct. App. Nov. 19, 2008), the Arkansas Court of Appeals affirmed the circuit court's holding. Def.'s Summ J. Mot. Ex. X.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to the non-nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008). Stokes cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1985). If the facts alleged by Stokes, when viewed in the light most favorable to his case, would not allow a reasonable jury to find in his favor, then summary judgment should be granted in favor of Southern. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. DISCUSSION

Summary judgment is appropriate on Stokes's only claim, malicious prosecution, because he has failed to provide evidence that Southern brought the underlying case either

without probable cause or with malice. In Arkansas, the essential elements of malicious prosecution are: (1) a proceeding instituted or commenced by the defendant against the plaintiff; (2) termination of that proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *Farm Serv. Coop. v. Goshen Farms, Inc.*, 590 S.W.2d 861, 865 (Ark. 1979). Of course, a plaintiff must successfully establish each element to recover.

A.   Probable Cause

Probable cause is based upon the existence of facts or information that would cause a person of ordinary caution to believe that the defendant is liable. *Hollingsworth v. First Nat'l Bank and Trust Co.*, 846 S.W.2d 176, 178 (Ark. 1993). The facts and circumstances surrounding both the commencement and the continuation of the suit are considered in determining whether probable cause existed. *Cordes v. Outdoor Living Ctr., Inc.*, 781 S.W.2d 31, 33 (Ark. 1989).

As a long-standing practice, Southern had first applied the proceeds from loan payments to cash notes held by Statesman. Dickerson Dep. 99:4–100:24. Although the circuit court held that this was a misapplication of the proceeds from the loan payments, the undisputed evidence shows that this misapplication had been part of Southern's normal course of business. Def.'s Summ. J. Mot. Ex. P; Dickerson Dep. 99:4–100:24. It was in reliance on this long-standing practice that Southern ultimately determined that the notes guaranteed by Stokes were deficient. Stokes has presented no evidence to show a different

4

reason for Southern's belief that money was owed on the notes that he guaranteed.

Based on this system, Southern had probable cause to believe that Stokes was liable for the deficiency even if the circuit court ultimately ruled in Stokes's favor. It is undisputed that Roberts still owed at least $249,854.03. The question at the time was to whom did he owe the money. Ultimately, the circuit court decided that Roberts had paid off the loans from Southern and not the loan from Statesman. Def. Summ. J. Mot. Ex. P. This decision was based on the legal determination that Southern and Stateman were separate entities. *Id.* The circuit court held that, because the two were separate entities, Southern had no right to apply checks made out in its name to accounts held by Statesman. *Id.*

Southern, however, had at one time held Statesman as a wholly owned subsidiary; and, at the time of the lawsuit, it still retained a thirty-eight percent interest. *See, e.g.*, McCoy Dep. 8:17–9:9; Resp. to Renewed Mot. for Summ. J., Feb. 2005, ECF No. 38, Ex. 1. Based on this relationship, Southern believed that it could operate with Statesman as a single entity and argued this point in legal proceedings. *See*, Resp. to Renewed Mot. for Summ. J., Feb. 2005, ECF No. 38, Ex. 1. Southern also points out that it operated with Statesman under an intercreditor agreement, which provided that the cash portions of crop loans would be repaid first. *Id.* This is all evidence of a genuine legal dispute between the parties over the relationship between Southern and Statesmen and of the propriety of first applying loan proceeds to the Statesman loan.

In order to demonstrate a lack of probable cause, Stokes points out that during the

5

state litigation, Southern tried to construe the Statesman loan as guaranteed—an interpretation not supported by the plain text of the contract. Pl.'s Resp. Br. at 2–4. Even if this argument is accepted as true, this does not show that Southern lacked probable cause to bring the suit. Stokes presents no evidence to demonstrate that this interpretation of the Statesman contract had anything to do with Southern's decision to sue. Indeed, it seems that this was simply one among many legal arguments made by the parties during complicated and extensive litigation.

The record indicates that there existed a genuine legal dispute between Stokes and Southern about how the proceeds from loan payments made by Roberts should have been applied. Although Stokes ultimately triumphed in the legal battle, this victory alone is not sufficient to show that Southern lacked probable cause to bring the suit on the guaranty. The undisputed evidence shows that, as a matter of law, Southern had probable cause to file and continue its lawsuit against Stokes.

B.  Malice

Even if probable cause had been lacking, Stokes would still have to prove that Southern acted with malice. Arkansas law defines malice as an improper or sinister motive for bringing the suit. *Hollingsworth*, 846 S.W.2d at 178. Malice can be inferred from a lack of probable cause when the surrounding circumstances indicate a sinister motive. *Cordes*, 781 S.W.2d at 34. Malice, however, does not flow as a legal necessity from the lack of probable cause. *Id.* at 33. All the surrounding facts must be considered in determining

whether malice can be inferred from a lack of probable cause. *Kable v. Carey*, 204 S.W. 748, 750 (Ark. 1918).

To prove malice, Stokes alleges that Southern schemed to "pay off its sister company's note that was not guaranteed by Stokes and otherwise lacked good security and then collect on the notes Stokes had guaranteed." Pl.'s Resp. Br. at 5. Aside from Southern's long-standing practice of first applying proceeds to cash loans, Stokes provides no evidence to support his contention that Southern improperly schemed to "misappropriate his money." *Id.* at 7–8. The simple fact that Southern eventually lost on its method of applying loan proceeds is not itself sufficient evidence to demonstrate that it acted with improper motive or purpose. Without more evidence, a reasonable jury could not find in Stokes's favor. *Bloom*, 440 F.3d at 1029 (8th Cir. 2006).

Stokes also alleges that Southern failed to inform him how checks were first applied to the Statesman note. Stokes, however, had access to the payment records when his attorney began taking depositions of Southern employees in June 2001. Pl.'s Reply Br. Ex. EE. At that time, he had ample opportunity to discover where and how the payments had been applied. Aside from mere allegations, Stokes has presented no evidence to support the conclusion that Southern actively concealed information about the amounts paid or the application of payments to the Statesman note.

In July 2004, Stokes suffered a Stroke. Pl.'s Resp. Br. 8. Several months later, in October 2004, John Byrd, attorney for Southern, sent Stokes's attorney a letter offering to

settle the case. *Id.* Ex. 15. Stokes cites this letter as evidence of malice. The pertinent part reads:

> I know you have advised your clients of the expenses associated with this lawsuit in the event of judgment in favor of Southern States. The attorney's fees and costs will be extremely high. Southern States has the resources to stay the course in this matter, and is committed to do so, in the event that this settlement opportunity passes.

This letter does not provide sufficient evidence for a reasonable jury to conclude that Southern brought or continued the lawsuit with malice. Even if a jury concluded that John Byrd wrote the letter with malice (an unlikely conclusion), this letter, written years after litigation began, still does not show that Southern had an improper or sinister motive for bringing or continuing the lawsuit.

Considering the facts alleged by Stokes in the light most favorable to his case and all the surrounding circumstances, there still is insufficient evidence of malice on the part of Southern. Therefore, summary judgment must be granted.

## IV. CONCLUSION

For all of the reasons set forth above, Southern's motion for summary judgment [Doc. No. 11] is granted.

IT IS SO ORDERED this 15th day of October, 2010.

*Brian S. Miller*
UNITED STATES DISTRICT JUDGE